# EXHIBIT A

COPY

Todd-Christopher Pitner
Plaintiff *in Propria Persona*
19405 Whispering Brook drive
Tampa, Florida  [33647]

DATE: 2/1/2021
HOUR: 10:16
DEPUTY SHERIFF:

## IN AND FOR THE SIXTH JUDICIAL CIRCUIT COURT,

## PASCO COUNTY, STATE OF FLORIDA

TODD-CHRISTOPHER PITNER

      PLAINTIFF

v.

      CASE NO. 51-2021-CA-0076ES

COSTCO WHOLESALE CORPORATION

      DEFENDANT

_____/

### COUNT I – COMPLAINT FOR INJUNCTION

### AGAINST VIOLATIONS OF STATE LAW

Plaintiff Todd-Christopher Pitner sues the defendant COSTCO WHOLESALE CORPORATION for injunctive relief and alleges the following.

### JURISDICTION AND VENUE

This Court has jurisdiction over this action pursuant to Article V of the Florida Constitution.  Venue is proper as both the plaintiff and defendant reside or conduct business within Pasco County Florida.

The plaintiff resides in Hillsborough County, Florida, and plaintiff's mailing address is 19405 Whispering Brook drive, Tampa, Florida.

The defendant is the Costco Wholesale Corporation with its place of business located in Pasco County Florida at the address of 225 Grand Cypress Drive in Lutz, Florida.

The material facts giving rise to this complaint took place in Pasco County, Florida.

### STATEMENTS OF FACT

The plaintiff is a regular member of the defendant's membership club and frequent shopper.

- 1 -

1   The statements made in plaintiff's supporting affidavit are re-stated and incorporated

2   herein.

3   The defendant's business is a grocery membership club but not a private membership

4   association and is open to the public and membership is not so exclusive that nearly anyone

5   can be a member who pays the fee and provides identification.  The defendant is a public

6   accommodation.

7   In recent months, the defendant has begun directing its employees to inform the

8   plaintiff, upon entering the defendant's place of business, that he is required to apply a

9   medical device over his face that restricts the natural airflow and alters the chemical

10  composition of the air he is breathing as a condition of entry onto the premises, shopping or

11  otherwise enjoying the membership benefits.

12  The defendant has also begun applying decals, arrows and other directional signs

13  and erecting barriers throughout its business thereby requiring the plaintiff to restrain his

14  movement and to remain six feet from other patrons, thereby restraining his liberty and

    freedom of movement.

15  The events giving rise to this complaint took place at defendant's place of business

16  on the date of November 13th 2020 and the defendant continues to engage in the acts

17  alleged herein.

18  The defendant is required to implement policies that comply with state law, including

19  the Florida Civil Rights Act of 1992, and its employees are prohibited from violating the

20  medical treatment rights of the plaintiff, including but not limited to the Patient's Bill of Rights

21  regarding informed consent and the licensing and insurance requirements for administering

22  medical interventions or treatments.

23  The defendant's business, although a membership club, is a public accommodation.

24  The plaintiff has advised several employees of the defendant that he is within a protected

25  class and protected under the Florida Civil Rights Act of 1992, to which the defendant did

26  not respond.

27

28

- 2 -

The plaintiff is not required to disclose his medical condition or the nature of his disability or health to the defendant as a condition of entering the premises or enjoying the membership benefits.

Applying a medical device to one's face that restricts normal air flow, oxygen intake and accumulates bacteria and carbon dioxide is a medical intervention.  It is an unsafe medical intervention as fifty years of research by the Occupational Safety Health and Health Administration has established.  The safety protocol and standards for such a medical intervention are regulated under 29 CFR §1910.134 and the defendant never complied with any provision of this regulation.

The safety standards of the Occupational Safety and Health Administration, 29 CFR §1910.134 have been established by decades of scientific study, that wearing a mask dangerously restricts the flow of oxygen and may result in permanent brain damage, organ failure, bacterial infections such as pleurisy and even death.  This is further demonstrated by a letter dated April 2nd 2007, from Richard E. Fairfax, the Director of OSHA Enforcement Programs, answering the question regarding OSHA's interpretation of the respiratory protection standard, 29 CFR §1910.134, a true and correct copy of which is attached as Exhibit  B.

Florida Statutes §456.065 makes it a crime to engage in the unauthorized practice of medicine (without a valid license and insurance) and imposes civil and criminal penalties upon anyone giving medical advice or examinations without a license and the proper insurance and training.

The law prohibits the following conduct:

a.  Practicing, attempting to practice, or advertising oneself as practicing any system of treating illness or affliction; and,

b.  Diagnosing, treating, operating on, or prescribing for any physical or mental condition; and,

c.  Engaging in a conspiracy to—or aiding and abetting someone else to—do any of those things.

- 3 -

1       The <u>Florida Patient's Bill of Rights and Responsibilities</u> under F.S. §381.026, requires

2 that the plaintiff be given the ability to make informed consent as to whether or not he

3 should accept such medical advice or participate in any medical examination or disclose

4 any medical information or vital statistics.

5       The defendant maintains a published policy regarding the conduct of its employees

6 known as its "Code of Ethics", a true and correct copy of which is included as Exhibit C and

7 may be located online here.[1]

8 It first states the following:

9 "**<u>Our Code of Ethics</u>**

10 **1.  Obey the law."**

11 It goes on to state:

12 "1.  Obey the law

13

14 The law is irrefutable!  Absent a moral imperative to challenge a law, we must
conduct our business in total compliance with the laws of every community

15 where we do business. We pledge to:

16 • Comply with all laws and other legal requirements.
• Respect all public officials and their positions.

17 • Comply with safety and security standards for all products sold."

18 These are the pertinent parts and it goes on to state:

19 "Reporting of Violations and Enforcement

20 1.  The Code of Ethics applies to all directors, officers, and employees of the
Company. Conduct that violates the Code of Ethics will constitute grounds for

21 disciplinary action,ranging from reprimand to termination and possible criminal

22 prosecution.

23 2.    All employees are expected to promptly report actual or suspected
violations of law or the Code of Ethics. Federal law, other laws and Costco

24 policy protect employees from retaliation if complaints are made in good faith.
Violations involving employees should be reported to the responsible

25 Executive Vice President, who shall be responsible for taking prompt and
appropriate action to investigate and respond.  Other violations (such as those

26 involving suppliers)  and those involving accounting, internal control and
auditing should be reported to the general Counsel or the Chief Compliance

27 Officer (999 Lake Drive, Issaquah, WA 98027), who shall be responsible for

28

---

1   https://investor.costco.com/static-files/1a1a8efe-73a8-4079-a8eb-25fcb41316b2

taking prompt and appropriate action to investigate and respond. Reports or complaints can also be made, confidentially if you choose, through the Whistle blower Policy link on the Company's eNet or Intranet site.

What do Costco's Mission Statement and Code of Ethics have to do with you? EVERYTHING!"

The defendant is involved in accepting bribes from various government agencies, the funds of which originate under the Emergency Use Authorization program, including but not limited to statutory emergency response funds, those under the CARES Act and FEMA funds along with "pandemic insurance" claims funded by the World Bank Group and paid to governments and government agencies  who are perpetrated a false emergency claim in order to obtain these funds.  This conduct violates the defendant's own "Anti-Bribery Program", a true and correct copy of which is attached as Exhibit D and may be located online  here.[2]

The plaintiff requests that this court take judicial notice that the Food & Drug Administration has defined the face masks people are now using as a medical device and to take judicial notice that Face masks are regulated by Food and Drug Administration because they satisfy the definition of a "medical device" under section 201(h) of the Federal Food, Drug and Cosmetic Act.

## ALLEGATIONS

The plaintiff re-states and re-alleges the foregoing and incorporates each herein and further alleges:

The defendant's violations of its own policies and thereby violating these laws creates unsafe and hazardous conditions.

Irreparable injury will result if the injunction is not granted.

If a private business can make whatever policies it wants, then why would it claim to be subject to penalties for not following the administrative health orders which are not even law?

The defendant cannot impose medical interventions (or examinations) as a condition of shopping as it is a public accommodation.

---

2   https://investor.costco.com/static-files/0f9295fd-adaf-4278-a0d6-1b2690d91d94

Only a public health officer can obtain a court order based upon a physician's affidavit identifying a specific person as having a communicable disease or having been exposed to a toxic substance.  Without a court order, there is no evidence of any direct threat and no authority to isolate, quarantine or impose medical interventions or examinations on anyone, see the Florida Pandemic Influenza Benchguide.[3]

Executive orders and "guidance" from any organization including but not limited to the "Center for Disease Control and Prevention" (CDC) or the "Centers for Medicare and Medicaid Services" (CMMS) have no force or effect of law upon private businesses or people and do not repeal, amend or alter existing laws, such as:  licensing and insurance obligations for administering medical interventions and examinations or the rights people have to informed consent and to choose or refuse any medical intervention or examination.

The defendant is a private business that is open to the public, even though it is a membership club, it is not a private membership association such as a church and it lacks the legal right to choose which laws it will follow and which it will ignore.  A private business can implement its own policies, provided they do not violate state law.

The defendant is subject to the penalties for false arrest and other torts for misapplying the trespass laws to remove people who refuse medical interventions.  It is not trespass to refuse a medical intervention as a condition for patronizing a public accommodation unless there is evidence of a violation of a specific law.

The health and well-being of the plaintiff and other patrons, vendors and employees complying with the defendant's illegal actions may result in many people acquiring deadly bacterial infections such as pleurisy, and organ failure, or permanent brain damage and possibly death.  Along with the plaintiff, the patrons, employees and vendors of the defendant are, not just being given medical advice, but are forcibly subjected to medical interventions and examinations by the defendant's employees who have no medical training and who have never obtained any medical licensing or practiced medicine of any kind.

Additionally, the defendant's violations of its own written policy also create the possibility of violent confrontations with customers entering via the front door.  The defendant's violations may also create unsafe situations for the plaintiff and other patrons

3   https://www.flcourts.org/content/download/218173/file/pandemic_benchguide.pdf

and personnel, for which the defendant has no insurance and for which there appears to be no recourse or accountability.

State law requires medical licensing and the appropriate insurance for this conduct and patrons have the right to informed consent which the defendant is unable to provide.

The defendant has no knowledge of the plaintiff's medical condition or disability, yet purports to advise or compel the plaintiff to act upon its medical advice without any legal authority such as a law or court order.

The defendant's violations of the law and its own policies can be avoided if the defendant is enjoined from continuing to violate its own written policies and correct its instructions to its employees and begin complying with it's own policies and the pertinent and applicable laws and regulations.

The defendant violates its own policies by advising patrons to accept and act upon its medical advice and by purportedly compelling or imposing medical treatments or interventions upon its patronizing members.

The defendant demands that the plaintiff submit to a medical intervention that involves applying a medical device to his face that dangerously restricts and alters the flow of oxygen into his body, and without any professional responsibility or accountability such as licensing or insurance or any type of medical training.

The defendant's written policies require the defendant to comply with all pertinent laws and regulations and this conduct, while violating the defendant's own policies, violates state law.

The plaintiff has no other adequate remedy at law and there is no other adequate remedy at law.

The plaintiff is a frequent patron of the defendant, and a member under contract with the defendant, and has a clear legal right to the requested relief.

The plaintiff has a likelihood of success on the merits because the defendant's written business policies are perfectly consistent with state law, federal law and the applicable regulations, including but not limited to the foregoing facts and allegations.

- 7 -

Additionally, the plaintiff, just like other members of the community, has the right to rely upon the written and published business policies and practices of the defendant, certainly when those policies require the defendant to comply with the law.

Likewise, the public interest will be served by the requested injunction, in part for the reason that the defendant is patronized by hundreds of other local residents and some tourists each week, all having the same or similar experience as the plaintiff has alleged herein.

Additionally, any bond requirements that may apply to the relief sought in this complaint have been waived or expressly waived by the defendant.

Plaintiff demands a jury trial.

### REQUESTED RELIEF

WHEREFORE, plaintiff respectfully requests an injunction against the defendant, enjoining the defendant from breaching its own company policy and enjoining the defendant from violating the pertinent laws and regulations of this state as explained forth herein.

### COUNT II – COMPLAINT FOR BREACH OF CONTRACT

The plaintiff Todd-Christopher Pitner sues the defendant COSTCO WHOLESALE CORPORATION for breach of contract, re-alleges the foregoing statements of fact and allegations, along with each statement made in plaintiff's affidavit, and incorporates each herein and further alleges the following:

### JURISDICTION AND VENUE

This Court has jurisdiction over this action pursuant to Article V of the Florida Constitution.  Venue is proper as both the plaintiff and defendant reside or conduct business within Pasco County, Florida.

The plaintiff resides in Hillsborough County, Florida, and his mailing address is Todd-Christopher Pitner, 19405 Whispering Brook drive, Tampa, Florida.

The defendant is the Costco Wholesale Corporation with its place of business located in Pasco County Florida at the address of 8712 West Linebaugh Avenue, Tampa, Florida 33625.

- 8 -

**STATEMENTS OF FACT**

The plaintiff re-alleges the foregoing statements and allegations from previous counts into this count for breach of contract and alleges the following.

The plaintiff has a membership agreement with the defendant in which the defendant is able sell quality grocery products and consumer goods on favorable terms such as competitive prices to the plaintiff. A copy of the membership agreement is expressed here.[4]

As alleged in other counts, the defendant maintains a written policy to "obey the law"; however, in recent days the defendant has implement policies that, whether or not are part of the membership agreement, violate various state and federal laws and also violate certain property rights of the plaintiff.

These conditions are null and void and not a binding provision of the membership agreement.

On Friday the 13th plaintiff went shopping at the defendant's place of business. Upon arriving at the front door, the Plaintiff was approached and stopped by the Defendant's store manager who blocked his path and stated that he had to submit to a medical intervention as a condition of shopping.

The plaintiff decided it would be important to make an audio/video recording of the anticipated conversation for the reason that the defendant was making its own audio and video recording of the interaction and for the reason that the recording was undertaken in a public accommodation where there was no reasonable expectation of privacy by any party.

The manager informed the plaintiff that unless he submitted to the medical intervention of applying a medical device over his face, thereby obstructing his airway and flow of oxygen, he would be "prevented" from shopping, even though the plaintiff is a long-standing member of the defendant.

Plaintiff made the recording of this conversation and then posted a video on his YouTube channel sharing the story and showed the video.

---

4   https://www.costco.com/member-privileges-conditions.html

- 9 -

1
2
3

On November 17th Plaintiff received an overnight letter (attached) informing him that his membership was canceled not due to a mask issue, but because he "was recording employees without their knowledge or consent."

4
5
6

This was the reason for the purported membership termination, even though it is quite obvious to every customer and employee and there are hundreds of cameras and recording devices all around the store that are continuously recording everyone.

7
8
9
10

As you can see in Exhibit A, by a copy of the letter, the defendant threatened that if the plaintiff showed up at any Costco location, that the defendant would use make a false police report of a criminal violation of "trespass", as a means to enforce its illegal policy of the medical intervention.

11
12

The plaintiff has not returned to the store as of this date and instead, has filed this lawsuit.

13

## ALLEGATIONS

14
15

Plaintiff re-alleges the foregoing statements of fact and allegations and incorporates each herein and further alleges as follows,

16
17

The plaintiff has a right to rely upon the membership agreement contract including but not limited to the defendant's written policy to "Obey the law."

18
19

The plaintiff re-states and incorporates each statement in his supporting affidavit herein.

20
21
22

The plaintiff is not bound by un-written policies, written policies or membership terms that violate the law or that violate the rights of the plaintiff, and the plaintiff is not required to waive any rights as a condition of enjoying the benefits of membership with the defendant.

23
24
25
26

The defendant is prohibited by law from engaging in activities that are illegal and is prohibited from imposing illegal conditions for membership. The plaintiff has met all conditions for membership with the defendant and revoking or canceling such membership because the plaintiff refuses any medical treatment or intervention or examination constitutes a breach of the agreement.

27
28

1    The defendant has no legal duty or authority to impose medical interventions or
2    medical examinations upon the plaintiff without his informed consent and without judicial
3    review and without the supervision of a licensed physician.

4    Plaintiff demands a jury trial.

5    WHEREFORE plaintiff demands judgment against the defendant, enjoining the
6    defendant from breaching the membership agreement it has with the plaintiff, and
7    reinstating such agreement if breached so that each party shall comply with the terms of
8    membership and pertinent laws, and for costs and attorney fees and other relief as this
9    court deems appropriate.

- 11 -

**COUNT III – VIOLATIONS OF FLORIDA CIVIL RIGHTS ACT OF 1992**

The plaintiff Todd-Christopher Pitner sues the defendant COSTCO WHOLESALE CORPORATION for violations of the Florida Civil Rights Act of 1992, re-alleges each of the foregoing statements and allegations in Counts I and II, along with each statement made in plaintiff's affidavit, and alleges the following:

**JURISDICTION AND VENUE**

This Court has jurisdiction over this action pursuant to Article V of the Florida Constitution and Chapter 760 of the Florida Civil Rights Act of 1992.  Venue is proper as both the plaintiff and defendant reside or conduct business within Pasco County, Florida.

The plaintiff resides in Hillsborough County, Florida, and his mailing address is Todd-Christopher Pitner, 19405 Whispering Brook drive, Tampa, Florida.

The defendant is the Costco Wholesale Corporation with its place of business located in Pasco County Florida at the address of 225 Grand Cypress Drive in Lutz, Florida.

**STATEMENTS OF FACT**

The plaintiff re-alleges the foregoing statements and allegations from previous counts, and the statements made in his affidavit, into this count for breach of contract and alleges the following.

On the date of November 13th, 2020,  the plaintiff visited the defendant's place of business and was refused entry.  The defendant's business is a grocery membership club but not a private membership association and is open to the public and membership is not so exclusive that nearly anyone can be a member who pays the fee and provides identification.  The defendant is a public accommodation.

The plaintiff is within a protected class of people recognized as having a disability or medical  condition that is protected by the Florida Civil Rights Act of 1992.

**ALLEGATIONS**

Plaintiff re-alleges the foregoing statements of fact and allegations and incorporates each herein and further alleges as follows,

- 12 -

At all times material to this complaint, the plaintiff was a member in good standing of the defendant. Following the incident described herein, the defendant retaliated against the plaintiff by sending him a notice stating that his membership was canceled.

The defendant failed or refused to make reasonable accommodations for the plaintiff who is in a protected class and protected under the Florida Civil Rights Act of 1992.

Chapter 760 of the Florida Statutes, also known as the Florida Civil Rights Act of 1992, makes discrimination or segregation unlawful in places of public accommodation.

Specifically, Chapter 760.08 states, "Discrimination in places of public accommodation.—All persons are entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation without discrimination or segregation on the ground of race, color, national origin, sex, pregnancy, handicap, familial status, or religion.

The Act further creates a private right of action for the Plaintiff under the circumstances. See, Chapter 760.11.

The plaintiff has commenced an administrative action against the defendant by filing a report with the Florida Commission on Human Rights on the date of December 13th, 2020. That complaint is still pending and was filed within the 365 day limit imposed by law.

The plaintiff has a right to rely upon the membership agreement contract including but not limited to the defendant's written policy to "Obey the law."

The plaintiff has a right to rely upon the laws of this state.

The plaintiff re-states and incorporates each statement in his supporting affidavit herein.

The plaintiff is not bound by un-written policies, written policies or membership terms that violate the law or that violate the rights of the plaintiff, and the plaintiff is not required to waive any rights as a condition of enjoying the benefits of membership with the defendant.

While the plaintiff's condition has been diagnosed by his physician, this is not a condition of his membership in a protected class that is protected by the Florida Civil Rights Act of 1992.

- 13 -

Moreover, the law does not distinguish between one having a diagnosed medical condition or disability or one who believes he has a disability without any diagnosis. The law does not require a member of such a protected class to disclose his or her medical condition so that an unqualified or unlicensed individual can determine its validity.

The plaintiff was denied access and service by the defendant because of his disability. The plaintiff duly noticed and explained that he had a disability which precluded him from wearing any medical device over his face or over his head as a condition of shopping at the defendant's place of business.  After explaining this to employees of the defendant upon arriving at the entrance and being prevented from entering the premises, the defendant threatened the plaintiff with arrest for trespass and denied that he had any protected rights under the Florida Civil Rights Act .

The plaintiff was denied full and equal access to the goods and services of the defendant.

A jury trial is permitted under this cause of action.

Plaintiff demands a jury trial.

WHEREFORE plaintiff demands judgment against the defendant for damages as permitted by law, and an order enjoining the defendant from continuing to violate the Florida Civil Rights Act of 1992 with respect to the plaintiff, and for costs and attorney fees and other relief as this court deems appropriate.

DATED this ___ day of January 2021.

Todd-Christopher Pitner,
Plaintiff in *propria persona*

- 14 -

Todd-Christopher Pitner
Plaintiff *in Propria Persona*
19405 Whispering Brook drive
Tampa, Florida  [33647]

## IN AND FOR THE SIXTH JUDICIAL CIRCUIT COURT,

## PASCO COUNTY, STATE OF FLORIDA

TODD-CHRISTOPHER PITNER

    PLAINTIFF

v.                           CASE NO. _____

COSTCO WHOLESALE CORPORATION

    DEFENDANT

_____/

### AFFIDAVIT IN SUPPORT OF COMPLAINT

STATE OF FLORIDA      )
                        )   ss
COUNTY OF HILLSBOROUGH  )

    I Todd-Christopher Pitner do hereby solemnly affirm that the statements herein are true and correct in substance and in fact and that I have personal knowledge of each.

    I am a bona-fide member of Costco and have an irrevocable license to shop at the defendant's place of business provided that I am not committing any legal violations such as harassment or disturbing the peace. I have never harassed anyone while shopping at Costco, nor have I ever committed any violations.

    There is no evidence appearing anywhere that I was at the time, or have ever been, a direct threat to any other person.

    There is no evidence of any physician's affidavit having been provided to the department of health or any public health officer identifying the affiant as having any communicable disease or having been exposed to any toxic substance.

    There is no evidence of any court order, obtained by any petition of the Department of Health or a public health officer, that was based upon any physician's affidavit in which the affiant was identified as having any communicable disease or having been exposed to any toxic substance.

- 15 -

1  There is no evidence of any court order determining that the affiant is a direct threat
2  to anyone.

3  There is no evidence of any court order imposing any terms of isolation or quarantine
4  or other measures upon the affiant.

5  My name is Todd Pitner, longtime member of Costco Wholesale. I am a qualified
6  individual with a medical disability that precludes me from wearing a mask or any other face
7  covering, and this disability is documented with a recently dated medical opinion letter from
8  a Medical Doctor and Psychiatrist in good standing:

9  May 18, 2020

10  I am a board-certified psychiatrist practicing privately for over 18-years. I have
11  treated numerous patients with the diagnosis and severity of symptoms to those of Mr. Todd
12  Pitner. I certify that Mr. Todd Pitner is a patient under my care, and in my medical opinion,
13  Mr. Pitner has a disability that precludes him from wearing a face mask or face covering (of
14  any kind).

15  Respectfully,
   Troy Noonan MD, PA

16  I suffer from Post-Traumatic Stress Disorder (PTSD) resulting from psychic trauma
17  experienced after almost dying from drowning at the age of seven. After the near-drowning
18  event, I experienced a 'secondary drowning'. In secondary drownings, fluid builds up in the
19  lungs, called pulmonary edema, post near-drowning incident. Physiologically, your body
20  goes into protection mode and your trachea closes to keep water from entering your lungs.
21  People die from secondary drowning because they cannot intake oxygen.

22  My Post-Traumatic Stress Disorder is an invisible disability tied to trauma, such as
23  the fear of being smothered, drowned, being enclosed, or having my airway cut off. In my
24  case, when I am triggered, I panic and my airway (trachea) wants to close, which can be
25  deadly.

26  Until local governments recently started issuing "policy" that "requires" someone to
27  wear a mask, people with a trauma-sourced fear like I have could simply self-mitigate by
28  choosing to sit at a table in the middle of a dining room instead of being restricted by a
   confining booth, or perhaps sit with their back to a wall to avoid someone coming up from

behind them, self-selecting an aisle seat on an airplane or even avoiding wearing turtlenecks because they may otherwise feel choked. Self-mitigation always seemed to suffice, until recently. Certainly, shopping as a paying member in Costco was never a trigger that could induce trauma and, in my case, even death.

As a medically diagnosed disabled person, I am properly credentialed with an Awareness Accessory that fully details my disability and the laws protecting me as well as the cell phone to my ADA Advocate should there be any questions. As my Costco purchase history details, I have shopped as a member without a mask due in accordance with the mask exemptions presented within the Florida state, counties and City of Tampa Executive Orders.

On November 10, 2020, I became aware of the alarming notice given by Costco's President and CEO found at this URL: https://www.costco.com/coronavirus.html

QUOTE: "Costco has had a face mask policy in effect since May 4, 2020, but members who could not wear a mask due to a medical condition were exempt. This is no longer the case."

Dear Costco Member,

Effective Nov. 16, 2020, we will require all members, guests and employees to wear a face mask or face shield at Costco locations. Entry to Costco will only be granted to those wearing a face mask or face shield. Children under the age of 2 are exempt.

Costco has had a face mask policy in effect since May 4, 2020, but members who could not wear a mask due to a medical condition were exempt. This is no longer the case. If a member has a medical condition that prevents them from wearing a mask, they must wear a face shield at Costco.

This updated policy may seem inconvenient to some, however we believe the added safety is worth any inconvenience. Our goal is to continue to provide a safe shopping environment for our members and guests, and to provide a safe work environment for our employees.

Thank you for your cooperation and support.

Craig Jelinek

President and CEO

1  Costco Wholesale

2          The use of the words "all members" is discriminatory and disproportionately impacts
3  individuals like me who are with disabilities that would cause them harm if forced by medical
4  intervention to wear a face covering, mask, or other item that restricts airflow or triggers
5  psychic trauma in any way.

6          To disclose that I am lawfully precluded from wearing a face mask or other face
7  covering is to simultaneously disclose that forcing me to wear one by unlawful medical
8  intervention would cause irreparable harm to me, in the way of causing me to
9  symptomatically respond in numerous ways to PTSD being triggered in a most cruel and
   discriminatory way.

10         People with events of choking, suffocation, sexual assault and other traumatic events
11  that include mouths or airways being covered or obstructed (linked to PTSD) could also be
12  affected by your discriminatory new policy, as well as persons with emphysema, asthma,
13  severe allergies, and persons with claustrophobia. This is not meant to fully list the sources
14  of disabilities that are or could be affected by your policy of mandated masks, there could be
15  many more. Your new policy violates both the first and second tenant of your own Code of
16  Ethics: 1) Obey the law, and 2) Take care of our members.

17         The Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act
18  are invoked, as well as 42 U.S.C. § 12203, which prohibits the interference with or retaliation
19  against the exercise of ADA rights. Note, a face shield is a face covering and is not a
20  reasonable accommodation. This invocation is printed on my medical disability Awareness
21  Accessory, attached to a lanyard, and is prominently visible and identifiable by any
   commercial business as the accessory is worn around my neck.

22         ALL businesses are required to provide reasonable modification for equal access of
23  disabled individuals. To modify a company's products and services in a way that excludes
24  those with disabilities, is Costco's liability, and creates irreparable harm to me personally,
25  unless immediate corrective action is effected, by either conspicuously altering the policy to
26  allow equal access for disabled persons who would be adversely affected by this policy, or
27  eliminating the policy altogether. (John, the previous sentence is clunky – feel free to edit...

28

- 18 -

please). While a private business can implement their own policies, these policies or unwritten practices cannot violate state or federal law.

To that end, on November 13, 2020, I visited my local Costco (#1249) at Wesley Chapel, Florida to express my concerns about the Costco CEO's policy change expressly disregarding lawful medical exemptions relating to wearing masks or face coverings. I brought with me my medical disability Awareness Accessory, the exemption letter from my physician along with the executive orders from the Governor, Mayor and County – all including expressed mask exemptions related to medical conditions such as mine. In addition to shopping as a paid member that day, my intention was to respectfully provide full notice and documentation of my disability so that I would not be harassed after the new policy took effect on Monday, November 16, 2020.

I use video and audio recording as an auxiliary aid for disability because PTSD is a communication disability, and I dissociate during triggering. Memory recall is impaired during a triggered event, so the video/audio recording is my auxiliary aid to mitigate memory recall deficiency. While Florida is a "two-party consent" state, Florida law (Fla. Stat. ch. 934.03) makes an exception for in-person communications when the parties do not have a reasonable expectation of privacy in the conversation, such as when they are engaged in conversation in a public place where they might reasonably be overheard, such as the entrance to Costco where members are entering and exiting. Costco is a private entity that is publicly accessible, and thus, is a public accommodation under Title III of the Americans with Disabilities Act. Any permission to record is moot since there is no expectation of privacy at a public accommodation, and there is copious surveillance in place. Moreover, if Costco was not a public accommodation, non-members could not enter to purchase prescription drugs – which they can.

As recorded, the following events took place. After getting a shopping cart, I attempted to enter Costco showing my membership identification. An employee concealing her identity with a mask stopped me and said I needed to wear a mask to enter. I pointed to my medical exemption Awareness Accessory and said, "I have a medical disability and cannot wear a mask." She then informed me that as of Monday, Costco would no longer acknowledge medical exemptions and I would have to wear a face shield (if not a mask) or I would not be allowed to enter. At that point, I asked to speak with a manager.

Another employee concealing her identity with a mask came to reinforce what the prior masked employee said and simply claimed that as of Monday, Costco's policy will no longer accommodate anyone with a medical disability adversely impacted by wearing a mask. The "reasonable accommodation" would be the requirement to wear a face shield. I brought out my medical opinion letter from my doctor and asked her to read where it says, "Mr. Pitner has a disability that precludes him from wearing a face mask or face covering (of any kind)." She responded, "That doesn't matter." I then brought out the three separate executive orders which all included medical exemptions to the mask mandate, and she wouldn't acknowledge. I informed her that Costco is getting bad legal advice and is breaking the law, whereby she then admonished me for "my tone." She stormed away speaking into her microphone, apparently calling her superior.

I was then approached by this masked woman along with a man also concealing his identity with a mask. I presented my case again relating to my medical disability and explained to them the nature of my PTSD which was caused by the drowning event. I shared, "The way my brain works, it does not discriminate between a mask and a face shield – a face covering of ANY kind induces panic triggering my trachea to want to close. I informed them that their new policy was a forced medical intervention without informed consent or a judicial review. I shared that they were practicing medicine without a license, qualifications, or sufficient insurance. Their answer was, "We're just following orders. As of Monday, you will not be able to enter without a face covering."

I asked them what they will do when I come back the following week to shop as a paying member. They informed me that if I did not comply, they would call law enforcement and have me arrested for trespass.

I would not be able to find out. Apparently, they stalked me in the store and after I paid almost $500 for my Costco goods, they identified me from the register receipt and began the process to cancel my membership. On the following Wednesday morning (November 18th), I received an overnight package at my home from Julie Cruz, Vice President of Costco, copying Rosina Yeo, General Manager of Costco #1249 – Wesley Chapel.

The overnight letter informed me that my membership was being cancelled for recording the conversation without their employee's consent. The letter stated, "This

behavior constitutes an unacceptable violation of the legitimate privacy rights of Costco's employees and tolerating it would violate our Company's longstanding commitment to take care of our employees.

Indeed, taking care of employees is Costco's third statement within their longstanding Code of Ethics, with the first tenant being to "Obey the law" and the second being, "Take care of our members." One can appreciate the irony.

Terminating my Costco membership is a breach of contract as I had every right to record the conversation as outlined above. Moreover, it's insulting to be informed by overnight letter that my mere presence on any Costco property will be deemed a trespass, and, in such case, Costco will call law enforcement to have me arrested.

As a medically diagnosed person with PTSD, I have suffered severe mental anxiety resulting from Costco's egregious harassment, intimidation, embarrassment, cancellation of membership, and threat of unlawful medical intervention that could cause death.

: Todd-Christopher: Pitner:

Todd-Christopher Pitner, Affiant

STATE OF FLORIDA                    )
                                    )    ss
COUNTY OF HILLSBOROUGH   )

Subscribed and Sworn to before me a notary public this _8_ day of January, 2021.

Signature of Notary

SEWNARINE SHARMA          [ls]
Commission # GG 916784
Expires January 25, 2024
Bonded Thru Budget Notary Services

- 21 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

written communication



November 17, 2020

Mr. Todd Pitner
19405 Whispering Brook Drive
Tampa, FL 33647

Dear Mr. Pitner,

We are writing in response to your recent visits to the Wesley Chapel Costco location.  It has come to our attention, that when you recently entered the building to discuss your concerns about Costco's new face covering policy for members, you were filming and recording employees without their knowledge or consent.  As you may know, Florida law prohibits the recording of a conversation even by one of the parties to the conversation, without the consent of all parties.  Further it appears that you have subsequently posted some of those recorded and/or filmed conversations on the Internet, again without the consent of the Costco employees involved.

This behavior constitutes an unacceptable violation of the legitimate privacy rights of Costco's employees and tolerating it would violate our Company's longstanding commitment to take care of our employees.

You are obviously dissatisfied with Costco, Costco's policies, and Costco's employees.  After reviewing the matter in its entirety, senior management has elected to cancel your Costco membership.  Although we regret having to take such extraordinary action, we owe our employees a duty to respect their privacy and to provide a safe and professional work environment.  Your behavior was contrary to our duty.

You will be receiving under separate cover a check for a full refund of your 2020-21 membership fee and the 2% Executive Membership reward you accrued to date.  Your membership has been cancelled.

Finally, this letter also notifies you that you are no longer welcome or permitted to enter onto any Costco Wholesale property, including without limitation any parking lot or building.  Your presence on any Costco property will be deemed a trespass, and, in such case, Costco reserves the right to notify the appropriate local police or sheriff's department.

Sincerely,
COSTCO WHOLESALE CORPORATION

Julie Cruz
Vice President

cc:     Rosina Yeo, General Manager, #1249 – Wesley Chapel

WESLEY CHAPEL #1249
2225 GRAND CYPRESS DR.
LUTZ, FL 33559

BANK OF AMERICA

NO. 12493206

52-153/112

DATE 11/18/2020

PAY One hundred forty-three & 21/100 —————— DOLLARS    $ 143.21

TO THE ORDER OF

Todd Pitner
19405 Whispering Brook Dr
Tampa, FL 33647

TWO SIGNATURES REQUIRED
VOID AFTER 60 DAYS

MP

MP

⑈"12493206"⑈ ⑈:011201539⑈: 80 060 766⑈"

REMITTANCE STATEMENT

| DATE | NUMBER | DESCRIPTION | ACCT. NO. | GROSS AMOUNT | DEDUCTIONS | NET AMOUNT |
|------|--------|-------------|-----------|--------------|------------|------------|
| 11-18-2020 | 1249 3206 | Cancellation of Membership 111899799228 | | | | 143.21 |

COSTCO WHOLESALE
WESLEY CHAPEL #1249
2225 GRAND CYPRESS DR.
LUTZ FL 33559

DETACH BEFORE DEPOSITING

# TROY NOONAN, M.D., P.A.

Child, Adolescent & Adult Psychiatry

Diplomate American Board of Psychiatry & Neurology

1119 Nikki View Drive
Brandon, FL 33511

Tel: (813) 657-7022
Fax: (813) 657-1049

May 18, 2020

To Whom It May Concern:

Re: Todd Pitner

     I am a board-certified psychiatrist practicing privately for over 18 years. I have treated numerous patients with the diagnosis and severity of symptoms to those of Mr. Todd Pitner. I certify that Mr. Todd Pitner is a patient under my care, and in my medical opinion, Mr. Pitner has a disability that precludes him from wearing a face mask or face covering.

     If you require any further questions, please contact my office with the required signed release of information.

Respectfully,

Troy Noonan MD, PA



# Florida Commission on Human Relations

## Technical Assistance Questionnaire for Public Accommodation Complaints

*Your answers to this questionnaire are confidential pursuant to Florida Statute 760.11(12).*

The primary purpose of this questionnaire is to solicit information about claims of discrimination, determine whether the Florida Commission on Human Relations (FCHR) has jurisdiction over those claims and provide charge filing counseling, as appropriate. Providing this information is voluntary, but the failure to do so may impede the Commission's investigation of a charge. It is not mandatory that this form be used to provide the requested information. NOTE: The FCHR may disclose the information included on this form to other state, local and federal agencies as appropriate or necessary to carry out the Commission's functions, or if the FCHR becomes aware of a civil or criminal law violation. If the FCHR accepts this form as a charge, this form will be provided to the organization identified.

\* \* \* \* \* \* \* \* \* \*

Please complete this entire form (please print) and return it to the Commission at the address listed at the bottom of this form. Answer all questions completely. Attach additional pages if needed to complete your responses. If you do not know the answer to a question, answer by stating "not known." If a question is not applicable, write "N/A."

REMEMBER, a charge of public accommodation discrimination <u>must be filed within 365 days</u> of the alleged act of discrimination.

1. Personal Information
   Last Name: __Pitner__   First Name: __Todd__   MI: __C__

   Street or Mailing Address: __19405 Whispering Brook Dr__   Apt or Unit #: _____

   City: __Tampa__   County: __USA__   State: __FL__   Zip: __33647__

   Phone Numbers: Home: (828) 333-3215   Work: (____) _____

   Mobile telephone: (____) __(same)__   Email address: __imtoddp@gmail.com__

   Date of Birth: __10/12/64__   Sex: ☒Male ☐Female

2. Please provide the name of a person we can contact if we are unable to reach you:

Name: Relationship: _Yana Pitner_

Address: _19405 Whispering Brook Dr._ City: _Tampa_   State: _FL_ Zip Code: _33647_

Home Phone: (___) _828-333.3244_ Other Phone: (___) _____

3. I believe that I was discriminated against by the following organization(s): _33559_

Organization Name: _Costco Wholesale Corporation_
Address: _2225 Grand Cypress Drive_ County: _Hillsborough_
City: _Lutz_ State: _FL_ Zip: _/_ Phone: (___) _813-279-7031_
Type of Business: _Wholefood wholesale membership warehouse Clubs_
Owner Name: _Rosina Yeo_ Phone: (___) _____
GM                             _(813) 279-7031_

4. Organization Representative Contact Information (If known):

Representative Name: _General Manager - Rosina Yeo_
Address: _2225 Grand Cypress Drive_ County: ~~Hillsborough~~ _Pasco_
City: _Lutz_ State: _FL_ Zip: _33559_ Phone: (___) _813-279.7031_

Phone Numbers: Home: (___) _____ Work: (___) _____

Mobile telephone: (___) _____ Email address: ? _N/A_

5. What is the reason (basis) for your claim of public accommodations discrimination?  Check all that apply.

*FOR EXAMPLE,* if you feel that you were treated worse than someone else because of race, you should check the box next to race. If you feel you were treated worse for several reasons, such as your sex, religion and national origin, check all of these bases.

☐ Race:   ☐ Black ☐White ☐ Asian ☐ Native Hawaiian/Pacific Islander ☐ American Indian or Alaska Native

☐ Color:   ☐ Light Skinned ☐ Dark Skinned ☐ Other: _____

☐ National Origin:  ☐ Hispanic ☐ Mexican ☐ Arab/Afghani/Middle Eastern ☐ East Indian ☐ Other: _____

☐ Sex: ◯Female ◯Male

☐ Pregnant or condition related to pregnancy or childbirth

☐ Religion (Please identify): _____

☒ Disability/Handicap:  ☒ Physical ☒ Mental   _BOTH_

☐ Familial Status (Please identify): _____

*Please refer to attached signed affidavit.
& Notarized

6.  What happened to you that you believe was discriminatory? Include the date(s) of harm, the action(s), and the name(s) and title(s) of the person(s) who you believe discriminated against you. Please attach additional pages if needed. *(Example: 08/08/2011 – Refused service by Mr. John Smith, waiter)*

On November 13, 2020, I was refused entry to Costco because I was not wearing a mask. I am a qualified individual with a medical disability that precludes me from wearing any kind of face covering. My disability is documented with a recently dated medical opinion letter from a medical Doctor and Psychiatrist in good standing. I had the letter with me along with the city and county Executive Orders citing my disorder as qualifying as a medical exemption. I asked for the manager and showed the documentation. They made me go outside to discuss. After 20-minutes, I was able to enter and shop but was told that despite my exemption, if I came again I would not be granted entry. I then recieved a membership cancellation letter and told if I came on property again I would be arrested for trespass.

Answer question 7 only if you are <u>claiming discrimination based on disability</u>. <u>If not, skip to question 8.</u>

7.  Do you have a disability, which is a physical or mental impairment that substantially limits a major life activity, such as caring for yourself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, or working? Please check all that apply:

    ☒ Yes, I have a disability.

    ☐ I do not have a disability now but I did have one.

    ☐ No disability, but the organization treats me as if I am disabled.

8.  Have you filed this charge previously with another agency? ☐ Yes ☒ No

    if so, provide the name of the agency and the date of filing: _____

    _____

9.  Have you sought help about this situation from a union, an attorney, or any other source? ☐ Yes ☒ No

    If so, provide the name of organization, name of person you spoke with, date of contact and the results or outcome, if any.

    _____

    _____

10.   How did you learn about the services provided by the Florida Commission on Human Relations?

☒ Commission website
☐ Other website (Please identify): _____
☐ Poster/kiosk/billboard
☐ Friend/family member
☐ Attorney
☐ Landlord/realtor/bank
☐ Already familiar with
☐ Legislator, city/county council person
☐ Other (Please identify): _____

**Please check one of the boxes below to tell us what you would like us to do with the information you are providing on this questionnaire.** If you would like to file a charge of public accommodations discrimination, you must do so within 365 days from the date you were allegedly discriminated against. If **you do not file a charge of discrimination within the time limit, you will lose your ability to file a charge. If you would like more information before filing a charge or you have concerns about the FCHR notifying the organization about your charge, you may wish to check Box 1. If you want to file a charge, you should check Box 2.**

BOX 1 ☐ I want to talk to an FCHR employee before deciding whether to file a charge. I understand that by checking this box, I have not filed a charge with the FCHR. I also understand that I could lose my ability to file a charge if I do not file in time.

BOX 2 ☒ I want to file a charge of discrimination, and I authorize the FCHR to look into the discrimination I described above. I understand that **the FCHR must give the organization that I accuse of discrimination information about the charge, including my name.** I also understand that the FCHR can only accept charges of discrimination based on race, religion, sex, pregnancy, national origin, disability, age, genetic information, or retaliation for opposing discrimination. **By signing below, I verify that I have read the above information and that the facts stated are true.**

*NOTE: If you have checked **Box 2** above, and your case is already 350 days or more from the alleged discrimination, the FCHR will accept this form as a charge if it meets the elements of a charge.*

Signature: _____        Date: __12 / 13 / 20__

Mail or FAX to:   Florida Commission on Human Relations
                  4075 Esplanade Way, Suite 110
                  Tallahassee, Florida 32399-7020
                  Telephone (850) 488-7082
                  Facsimile (850) 487-1007

Todd-Christopher Pitner
19405 Whispering Brook Drive
Tampa, Florida [33647]
828-333-3215

In The Matter Of:

Todd-Christopher Pitner and Costco Wholesale's Discrimination

To: Florida Commission on Human Relations
    4075 Esplanade Way, Suite 110
    Tallahassee, Florida 32399-7020

# AFFIDAVIT OF FACT

Before me, the undersigned authority, personally appeared Todd-Christopher Pitner, who being by me duly sworn, deposed as follows: "I, Todd-Christopher Pitner, a man and a creation of God-Almighty, am over the age of consent, am of sound mind, and have personal knowledge of the matters stated herein. I have created this Affidavit to establish the true facts of this matter, because this matter lacks the standard of regularity. I declare under the penalty of perjury and under the laws of the united States of America, that I will testify in open court that the facts stated herein are the truth, the whole truth, and nothing but the truth, so help me God."

1.      I, Todd-Christopher Pitner, hereinafter I, me, my, myself, reserve all of my God-given rights, secured and protected by the Constitution of Florida and the Constitution of the United States of America. I waive no rights, EVER.

2.      I swear as truthful my Affidavit of Fact:

"My name is Todd Pitner, longtime member of Costco Wholesale. I am a qualified individual with a medical disability that precludes me from wearing a mask or any other face covering, and this disability is documented with a recently dated medical opinion letter from a Medical Doctor and Psychiatrist in good standing:

> May 18, 2020
>
> I am a board-certified psychiatrist practicing privately for over 18-years. I have treated numerous patients with the diagnosis and severity of symptoms to those of Mr. Todd Pitner. I certify that Mr. Todd Pitner is a patient under my care, and in my medical opinion, Mr. Pitner has a disability that precludes him from wearing a face mask or face covering (of any kind).
>
>                                        Respectfully,
>
>                                        Troy Noonan MD, PA

I suffer from **Post-Traumatic Stress Disorder (PTSD)** resulting from psychic trauma experienced after almost dying from drowning at the age of seven. After the near-drowning

event, I experienced a 'secondary drowning'. In secondary drownings, fluid builds up in the lungs, called pulmonary edema, post near-drowning incident. Physiologically, your body goes into protection mode and your trachea closes to keep water from entering your lungs. People die from secondary drowning because they cannot intake oxygen.

My Post-Traumatic Stress Disorder is an invisible disability tied to trauma, such as the fear of being smothered, drowned, being enclosed, or having my airway cut off. In my case, when I am triggered, I panic and my airway (trachea) wants to close, which can be deadly.

Until local governments recently started issuing "policy" that "requires" someone to wear a mask, people with a trauma-sourced fear like I have could simply **self-mitigate** by choosing to sit at a table in the middle of a dining room instead of being restricted by a confining booth, or perhaps sit with their back to a wall to avoid someone coming up from behind them, self-selecting an aisle seat on an airplane or even avoiding wearing turtlenecks because they may otherwise feel choked. Self-mitigation always seemed to suffice, <u>until recently</u>. Certainly, shopping as a paying member in Costco was never a trigger that could induce trauma and, in my case, even death.

As a medically diagnosed disabled person, I am properly credentialed with an Awareness Accessory that fully details my disability and the laws protecting me as well as the cell phone to my ADA Advocate should there be any questions. As my Costco purchase history details, I have shopped as a member without a mask due in accordance with the *mask exemptions* presented within the Florida state, Hillsborough County and City of Tampa Executive Orders.

On November 10, 2020, I became aware of the alarming notice given by Costco's President and CEO found at this URL: https://www.costco.com/coronavirus.html

QUOTE: **"Costco has had a face mask policy in effect since May 4, 2020, but members who could not wear a mask due to a medical condition were exempt. *This is no longer the case.*"**

Dear Costco Member,

Effective Nov. 16, 2020, we will require all members, guests and employees to wear a face mask or face shield at Costco locations. Entry to Costco will only be granted to those wearing a face mask or face shield. Children under the age of 2 are exempt.

Costco has had a face mask policy in effect since May 4, 2020, but members who could not wear a mask due to a medical condition were exempt. This is no longer the case. If a member has a medical condition that prevents them from wearing a mask, they must wear a face shield at Costco.

This updated policy may seem inconvenient to some, however we believe the added safety is worth any inconvenience. Our goal is to continue to provide a safe shopping environment for our members and guests, and to provide a safe work environment for our employees.

Thank you for your cooperation and support.

Craig Jelinek
President and CEO
Costco Wholesale

The use of the words "all members" is discriminatory and disproportionately impacts individuals like me who are with disabilities that would cause them harm if forced by medical intervention to wear a face covering, mask, or other item that restricts airflow or triggers psychic trauma in any way.

To disclose that I am lawfully precluded from wearing a facemask or other face covering is to *simultaneously* disclose that forcing me to wear one by unlawful medical intervention would cause irreparable harm to me, in the way of causing me to symptomatically respond in numerous ways to PTSD being triggered in a most cruel and discriminatory way.

People with events of choking, suffocation, sexual assault and other traumatic events that include mouths or airways being covered or obstructed (linked to PTSD) could also be affected by your discriminatory new policy, as well as persons with emphysema, asthma, severe allergies, and persons with claustrophobia. This is not meant to fully list the sources of disabilities that are or could be affected by your policy of mandated masks, there could be many more. Your new policy violates both the first and second tenant of *your own* **Code of Ethics**: 1) **Obey the law**, and 2) **Take care of our members**.

The Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act are invoked, as well as 42 U.S.C. § 12203, which prohibits the interference with or retaliation against the exercise of ADA rights. Note, a face *shield* is a face *covering* and is <u>not</u> a reasonable accommodation. This invocation is printed on my medical disability Awareness Accessory, attached to a lanyard, and is prominently visible and identifiable by any commercial business as the accessory is worn around my neck.

ALL businesses are required to provide reasonable modification for equal access of disabled individuals. To modify a company's products and services in a way that **excludes those with disabilities**, is <u>Costco's liability</u>, and creates irreparable harm to me personally, unless immediate corrective action is effected, by either conspicuously altering the policy to allow equal access for disabled persons who would be adversely affected by this policy, or eliminating the policy altogether. While a private business *can* implement their own policies, these policies or unwritten practices *cannot* violate state or federal law.

To that end, on November 13, 2020, I visited my local Costco (#1249) at Wesley Chapel, Florida to express my concerns about the Costco CEO's policy change expressly disregarding lawful medical exemptions relating to wearing masks or face coverings. I brought with me my medical disability Awareness Accessory, the exemption letter from my physician along with the executive orders from the Governor, Mayor and Hillsborough County – all including expressed

mask exemptions related to medical conditions such as mine. In addition to shopping as a paid member that day, my intention was to respectfully provide full notice and documentation of my disability so that I would not be harassed after the new policy took effect on Monday, November 16, 2020.

I use video and audio recording as an auxiliary aid for disability because PTSD is a communication disability, and I dissociate during triggering. Memory recall is impaired during a triggered event, so the video/audio recording is my auxiliary aid to mitigate memory recall deficiency. While Florida is a "two-party consent" state, Florida law (Fla. Stat. ch. 934.03) makes an exception for in-person communications when the parties do not have a reasonable expectation of privacy in the conversation, such as when they are engaged in conversation in a public place where they might reasonably be overheard, such as the entrance to Costco where members are entering and exiting. Costco is a private entity that is publicly accessible, and thus, is a **public accommodation** under Title III of the Americans with Disabilities Act. Any permission to record is moot since there is no expectation of privacy at a public accommodation, and there is copious surveillance in place. Moreover, if Costco was *not* a public accommodation, non-members could not enter to purchase prescription drugs – which they can.

As recorded, the following events took place. After getting a shopping cart, I attempted to enter Costco showing my membership identification. An employee concealing her identity with a mask stopped me and said I needed to wear a mask to enter. I pointed to my medical exemption Awareness Accessory and said, "I have a medical disability and cannot wear a mask." She then informed me that as of Monday, Costco would no longer acknowledge medical exemptions and I would have to wear a face shield (if not a mask) or I would not be allowed to enter. At that point, I asked to speak with a manager.

Another employee concealing her identity with a mask came to reinforce what the prior masked employee said and simply claimed that as of Monday, Costco's policy will no longer accommodate anyone with a medical disability adversely impacted by wearing a mask. The "reasonable accommodation" would be the requirement to wear a face shield. I brought out my medical opinion letter from my doctor and asked her to read where it says, "Mr. Pitner has a disability that precludes him from wearing a face mask or face covering (of any kind)." She responded, "That doesn't matter." I then brought out the three separate executive orders which all included medical exemptions to the mask mandate, and she wouldn't acknowledge. I informed her that Costco is getting bad legal advice and is breaking the law, whereby she then admonished me for "my tone." She stormed away speaking into her microphone, apparently calling her superior.

I was then approached by this masked woman along with a man also concealing his identity with a mask. I presented my case again relating to my medical disability and explained to them the nature of my PTSD which was caused by the drowning event. I shared, "The way my brain works, it does not discriminate between a mask and a face shield – a face covering of ANY kind induces panic triggering my trachea to want to close. I informed them that their new

policy was a forced medical intervention without informed consent or a judicial review. I shared that they were practicing medicine without a license, qualifications, or sufficient insurance. Their answer was, "We're just following orders. As of Monday, you will not be able to enter without a face covering."

I asked them what they will do when I come back the following week to shop as a paying member. They informed me that if I did not comply, they would call law enforcement and have me arrested for trespass.

I would not be able to find out. Apparently, they stalked me in the store and after I paid almost $500 for my Costco goods, they identified me from the register receipt and began the process to cancel my membership. On the following Wednesday morning (November 18th), I received an overnight package at my home from Julie Cruz, Vice President of Costco, copying Rosina Yeo, General Manager of Costco #1249 – Wesley Chapel.

The overnight letter informed me that my membership was being cancelled for recording the conversation without their employee's consent. The letter stated, "This behavior constitutes an unacceptable violation of the legitimate privacy rights of Costco's employees and tolerating it would violate our Company's longstanding commitment to take care of our employees.

Indeed, taking care of employees is Costco's third statement within their longstanding **Code of Ethics**, with the first tenant being to "Obey the law" and the second being, "Take care of our members." One can appreciate the irony.

Terminating my Costco membership is a breach of contract as I had every right to record the conversation as outlined above. Moreover, it's insulting to be informed by overnight letter that my mere presence on any Costco property will be deemed a trespass, and, in such case, Costco will call law enforcement to have me arrested.

As a medically diagnosed person with PTSD, I have suffered severe mental anxiety resulting from Costco's egregious harassment, intimidation and threat of unlawful medical intervention that could cause death."

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on this the 15th day, of the 12th month, in the year of our Lord and Savior, two thousand twenty.

_____
Todd-Christopher Pitner, Affiant

Notary used without prejudice to Affiant's rights:

BE IT REMEMBERED, That on this _15_ day of _December_ _2020_ in the year of our LORD, two thousand and twenty, personally appeared before me, the Subscriber, a Notary Public for the State of Florida, Todd-Christopher Pitner, party to this Document, known to me personally to be such, and he acknowledged this Document to be his act and deed. Given under my hand, and seal of office, the day and year aforesaid.

Notary Public Sitting in, and for, The State of Florida

JUAN MIGUEL AGUIRRE
Notary Public, State of Florida
Commission# GG 264256
My comm. expires Oct. 2, 2022

Todd-Christopher Pitner
19405 Whispering Brook Drive
Tampa, Florida [33647]

---

Richard James Olin, General Counsel
COSTCO WHOLESALE CORPORATION
999 Lake Drive, Suite 200
Issaquah, Washington 98027

W. Craig Jelinek, President & CEO
COSTCO WHOLESALE CORPORATION
999 Lake Drive, Suite 200
Issaquah, Washington 98027

Florida Attorney General
Ashley Moody
The Capitol PL-01
Tallahassee, FL 32399-1050

Fla. Dept. of Business and Pro. Reg.
Raymond Treadwell, General Counsel
2601 Blair Stone Road
Tallahassee, Florida 2399-202

November 23, 2020
RE:

### A PRIVATE BUSINESS **CAN** MAKE ITS OWN POLICIES
### THESE POLICIES **CANNOT** VIOLATE THE LAW
### **IGNORANCE OF THE LAW IS NOT A DEFENSE**

Hello Richard,

Please be advised that your new, unwritten policy of forced medical interventions imposed upon members violates your "Code of Ethics", the first provision of which boldly states "Obey the Law" and "The law is irrefutable!"

And before I continue addressing this matter to you Richard, I want to ask Ms. Moody and Mr. Treadwell the following question:

**Can medical interventions be imposed upon every single member of an entire population without the informed consent of each member and without judicial review?**

I'll help you answer this question by directing you to remediate yourself with the <u>Florida Pandemic Influenza Benchguide</u>.

Now, as I was saying to Mr. Olin, let's continue (for the second time – I previously sent the same notice November 18, 2020) by reviewing just some of the laws that Costco is violating:

- Patient's Bill of Rights and informed consent.
- Practicing Medicine without a license, qualifications or sufficient insurance
- Imposing dangerous medical interventions in violation of OSHA safety regulations
- Harassing, threatening and intimidating people while concealing your identities with a mask.
- The state and federal versions of the Civil Rights Act
- False imprisonment and unlawful restraint
- Bribery & Racketeering involving public funds
- Violating your own "Code of Ethics" which requires compliance with all laws.
- Illegal epidemiological experiments

There is no dispute that no law permits non-qualified individuals, such as your employees, to administer or impose medical interventions upon members and shoppers at any

of your retail locations. Each of these locations is a public accommodation and none of these locations meets the criteria of a private membership association.

**Please be advised once again that a private business can make its own policies, but these policies cannot violate the law or the rights of people.**

Costco has never been delegated the authority or obligation, by any operation of law, to protect the public from any danger, whatsoever.

Costco lacks the capacity (i.e. training, supplies, insurance, licensing and funding) to engage in forced medical interventions.

Even physicians are precluded by law from imposing medical interventions on their own patients. What leads you to believe that you are able to do this without penalty?

Each of your members has the right to informed consent before undertaking any medical examination or intervention.

Likewise, you may be subject to a variety of tort claims by using the sheriff's office or police to enforce your illegal policies under the guise of "trespass", especially when trespass requires a violation. Refusing a medical treatment is not a violation of any law and does not constitute trespass or disorderly conduct. Operating a private business on private property that is open to the public, even though it is a membership shopping club, is the very definition of a public accommodation and of course, your policies and the conduct of your employees cannot violate state law.

And refusing your medical intervention does not create a "direct threat" to anyone as there is no court order establishing such conditions regarding anyone because the Department of Health is not following the law (see the Florida Benchguide). The Department of Health (DOH) and Department of Business and Professional Regulation (DBPR) appear to be participating in the same disaster fraud.

The DOH can only impose isolation and quarantine measures on certain people for which an affidavit has been presented by a physician to the DOH, identifying a specific individual has having a communicable disease or having been exposed to a toxic substance. If necessary, the DOH may apply to the Circuit Court for a temporary restraining order against that individual, subject to judicial review. The DOH has no legal right to make announcements in the news proclaiming that everyone is contagious and then impose quarantines on everyone at the same time.

Likewise, the DBPR cannot revoke business licensing or impose fines under these conditions, executive order or not. Executive orders have no legislative authority and have no judicial authority and cannot stand alone as the sole authority for the illegal measures now being undertaken by the DOH and DBPR and now Costco and the police.

Your employees have no legal authority to require members (or employees or vendors) to apply a medical device to their faces that dangerously obstructs the flow of oxygen, and accumulates dangerous levels of carbon dioxide and deadly bacteria. Neither the medical necessity or medical efficacy of these medical devices, the masks you purportedly require members to wear, has ever been proven; however, the scientific findings from the Occupational Safety and Health Administration, dating back to 1970, more than adequately establish that wearing such devices causes exacerbated bacterial infections such as staphylococcus, pleurisy, and Legionnaires disease, along with cellular death (e.g. of the hippocampus) organ failure, and even death. The conduct you have instructed your employees to follow violates long-standing OSHA safety regulations in addition to violating a list of state and federal laws and regulations, and of course, your own written "Code of Ethics".

Costco is not only unwilling but unable to guarantee that any of its "required" medical interventions will prevent the spread of any communicable disease, not even one scintilla. In fact, no such communicable disease has ever been proven to exist. The interventions, including the oxymoron of "social distancing" have nothing to do with any sort of health whatsoever.

Costco is not insured or insurable for engaging in these activities, especially since some of them require licensing and some are imposed against people in violation of state law and the rights of these people.

What insurance does Costco have for someone who informs its employees that he cannot wear a mask because of an existing medical condition but then complies with your illegal policy and then collapses on the floor and possibly falls into a coma or suffers death?  You and I both know that you don't have any insurance against this situation because there is no under-writing on the planet for it.  It is not insurable because **there is no insurance for forced medical interventions by people without any qualifications or licensing upon people against their right to informed consent.**

**Let's not forget the fact that these interventions are imposed without even a single consideration to review one's medical history or conduct any medical examination, not even my own physician would engage in this conduct, at least for the reason that he may be considered negligent. If my own physician would be negligent for failing to conduct a pertinent medical examination before recommending a medical intervention, what would that make your employees who have no medical training whatsoever?**

Has Costco been promised immunity from these violations?

Is Costco receiving money or other financial benefits under any "Emergency Use Authorization" plans?

Is Costco receiving any portion of the insurance claims from the so-called "pandemic insurance" sold to governments by the World Bank Group or other organizations?

Is Costco assisting in an unauthorized and unregistered epidemiological experiment or any clinical studies in violation of 21 CFR §50.21 or the Nuremberg Code?

Is Costco receiving any subsidy or financial incentive or benefits from the Food & Drug Administration, or any university?

Is Costco receiving compensation of any kind for the collection and dissemination of consumer data obtained as a result of its illegal policies?

Is Costco acting upon any court order obtained by the Department of Health in which a physician reported on an affidavit, a specific individual as having any communicable disease or having been exposed to any toxic substance?

Is Costco acting upon any court order imposing any conditions of isolation or quarantine any specific individual?

Please be advised that you are out-numbered.  And in spite of having money to spend, you lack the ability to re-assure your investors, bond holders and insurance carriers that being sued by hundreds of people every quarter for violating your own code of ethics and taking bribe money and emergency funds under false pretenses is "nothing to worry about".

Sincerely,


Todd-Christopher Pitner

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT B

2007 OSHA Letter

UNITED STATES
DEPARTMENT OF LABOR

**Occupational Safety and Health Administration**
1. Standard Interpretations
2. Clarification of OSHA's requirement for breathing air to have at least 19.5 percent oxygen content.

° **Standard Number:**
1910.134
1910.134(d)(2)(i)(A)
1910.134(d)(2)(i)(B)
1910.134(d)(2)(iii)

OSHA requirements are set by statute, standards and regulations. Our interpretation letters explain these requirements and how they apply to particular circumstances, but they cannot create additional employer obligations. This letter constitutes OSHA's interpretation of the requirements discussed. Note that our enforcement guidance may be affected by changes to OSHA rules. Also, from time to time we update our guidance in response to new information. To keep apprised of such developments, you can consult OSHA's website at http://www.osha.gov.

April 2, 2007

Mr. William Costello
Vice President
FirePASS Corporation
1 Collins Drive
Carneys Point, NJ 08069

Dear Mr. Costello:

Thank you for your January 8, 2007 letter to the Occupational Safety and Health Administration's (OSHA's) Directorate of Enforcement Programs regarding the Respiratory Protection Standard, 29 CFR 1910.134. This letter constitutes OSHA's interpretation only of the requirements discussed and may not be applicable to any question not delineated within your original correspondence.

In your letter you ask OSHA to revise the Respiratory Protection Standard to state that an atmosphere containing a partial pressure of oxygen at or above 100 mm of mercury is safe for employees when employers demonstrate that, under all foreseeable conditions, they can maintain the partial pressure of oxygen at or above 100 mm of mercury. Although most of your letter argues for the use of "partial pressures of oxygen" to describe atmospheric oxygen concentrations, the expression "percent oxygen" was purposely chosen during the rulemaking for the Respiratory Protection Standard. Oxygen meters used to assess hazardous conditions by safety personnel in both general industry and construction are calibrated in percent oxygen, and employers and employees are familiar with, and prefer, this terminology. This same terminology has been used in the Confined Space Standard, 29 CFR 1910.146, since 1993.

**Paragraph (d)(2)(iii) of the Respiratory Protection Standard considers any atmosphere with an oxygen level below 19.5 percent to be oxygen-deficient and immediately dangerous to life or health.** To ensure that employees have a reliable source of air with an oxygen content of at least 19.5 percent, paragraphs (d)(2)(i)(A) and (d)(2)(i)(B) of the Respiratory Protection Standard require employers working under oxygen-deficient conditions to provide their employees with a self-contained breathing apparatus or a combination full-facepiece pressure-demand supplied-air respirator with auxiliary self-contained air supply. In the preamble to the final Respiratory Protection Standard, OSHA discussed extensively its rationale for requiring that employees breathe air consisting of at least 19.5 percent oxygen. The following excerpt, taken from the preamble, explains the basis for this requirement:

> Human beings must breathe oxygen . . . to survive, and begin to suffer adverse health effects when the oxygen level of their breathing air drops below [19.5 percent oxygen]. Below 19.5 percent oxygen . . ., air is considered oxygen-deficient. At concentrations of 16 to 19.5 percent, workers engaged in any form of exertion can rapidly become symptomatic as their tissues fail to obtain the oxygen necessary to function properly (Rom, W., *Environmental and Occupational Medicine*, 2nd ed.; Little, Brown; Boston, 1992). Increased breathing rates, accelerated heartbeat, and impaired thinking or coordination occur more quickly in an oxygen-deficient environment. Even a momentary loss of coordination may be devastating to a worker if it

occurs while the worker is performing a potentially dangerous activity, such as climbing a ladder. Concentrations of 12 to 16 percent oxygen cause tachypnea (increased breathing rates), tachycardia (accelerated heartbeat), and impaired attention, thinking, and coordination (e.g., Ex. 25-4), even in people who are resting.

At oxygen levels of 10 to 14 percent, faulty judgment, intermittent respiration, and exhaustion can be expected even with minimal exertion (Exs. 25-4 and 150). Breathing air containing 6 to 10 percent oxygen results in nausea, vomiting, lethargic movements, and perhaps unconsciousness. Breathing air containing less than 6 percent oxygen produces convulsions, then apnea (cessation of breathing), followed by cardiac standstill. These symptoms occur immediately. Even if a worker survives the hypoxic insult, organs may show evidence of hypoxic damage, which may be irreversible (Exs. 25-4 and 150; also reported in Rom, W. [see reference in previous paragraph]).

(*Federal Register, Vol. 63, p. 1159.*) The rulemaking record for the Respiratory Protection Standard clearly justifies adopting the requirement that air breathed by employees must have an oxygen content of at least 19.5 percent. A lesser concentration of oxygen in employees' breathing air could endanger them physiologically and diminish their ability to cope with other hazards that may be present in the workplace. The rulemaking record also demonstrates that any workplace atmosphere controlled at or near your recommended minimal oxygen level of 100 mm of mercury at sea level (equivalent to about 13 percent oxygen at sea level) is not safe and healthful for all employees. Exposing employees to partial pressures of oxygen that approach 100 mm of mercury at sea level leaves them with no margin of safety from potentially debilitating effects, which could appear suddenly and without warning.

OSHA recognizes that, at higher altitudes, oxygen in air has a partial pressure that is less than the partial pressure of oxygen in air at sea level; accordingly, the Respiratory Protection Standard makes allowances for employees who work at altitude. OSHA made these allowances based on record evidence showing that such employees usually are acclimated to the reduced oxygen partial pressures and, as a result, will not experience the physiological dysfunction and performance impairments seen in non-acclimated employees. Nevertheless, when the oxygen concentration at altitude becomes oxygen-deficient, paragraph (d)(2)(iii) of the Respiratory Protection Standard requires employers to provide a supplied-air respirator that delivers at least 19.5 percent oxygen to the employee. In the preamble to the final Respiratory Protection Standard, the Agency explained this requirement as follows:

> OSHA's experience confirms the record evidence that most work at higher altitudes is performed by fully acclimated workers (Exs. 54-6, 54-208). These provisions will allow acclimated workers to continue to perform their work without oxygen-supplying respirators, at any altitude up to 14,000 feet altitude, as long as the ambient oxygen content remains above 19.5% and the employee has no medical condition that would require the use of supplemental oxygen.

(*Federal Register, Vol. 63, p. 1203.*) Therefore, in addition to the protection afforded to them by altitude acclimation, OSHA's Respiratory Protection Standard ensures that employees working under oxygen-deficient conditions at altitude will have an adequate and reliable breathing supply consisting of 19.5 percent oxygen, an oxygen content that will provide the employees exposed to these conditions with a substantial margin of safety.

In conclusion, OSHA would not consider any environments with your suggested oxygen partial pressure of 100 mm of mercury (~13 percent oxygen at sea level) to be safe for all employees. For those employees that can tolerate such levels, a work environment with only 13 percent oxygen provides no margin of safety from the potentially debilitating effects resulting from exposure to low oxygen levels, which could suddenly appear without warning. Accordingly, the Agency will not propose or adopt a revision to the Respiratory Protection Standard that would allow employees to work in such environments, even when the employer can demonstrate that, under all foreseeable conditions, the partial pressure of oxygen can be maintained at 100 mm of mercury.

In several telephone conversations we have had with you since we received your letter, you mentioned studies that purportedly demonstrate the safety of hypoxic environments in the workplace. We would be interested in reviewing any authoritative studies or information that specifically support your claims regarding the safety of such systems.

Thank you for your interest in occupational safety and health. We hope you find this information helpful. OSHA requirements are set by statute, standards, and regulations. Our interpretation letters explain these requirements and how they apply to particular circumstances, but they cannot create additional employer obligations. This letter constitutes OSHA's interpretation of the requirements discussed. Note that our enforcement guidance may be affected by changes to

OSHA rules. Also, from time to time we update our guidance in response to new information. To keep apprised of such developments, you can consult OSHA's website at http://www.osha.gov. If you have any further questions, please feel free to contact the Office of General Health Enforcement at (202) 693-2190.

Sincerely,

Richard E. Fairfax,Director
Directorate of Enforcement Programs
Occupational Safety & Health Administration
200 Constitution Ave NW
Washington, DC 20210
800-321-6742 (OSHA)

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT C

*Code of Ethics*

- 24 -

## Our Mission

**To continually provide our members with quality goods and services at the lowest possible prices.**

In order to achieve our mission we will conduct our business with the following Code of Ethics in mind:

## Our Code of Ethics

**1. Obey the law.**
**2. Take care of our members.**
**3. Take care of our employees.**
**4. Respect our suppliers.**

If we do these four things throughout our organization, then we will achieve our ultimate goal, which is to:

**5. Reward our shareholders.**

**Costco's Code of Ethics**

**1. Obey the law**

The law is irrefutable! Absent a moral imperative to challenge a law, we must conduct our business in total compliance with the laws of every community where we do business. We pledge to:

- Comply with all laws and other legal requirements.
- Respect all public officials and their positions.
- Comply with safety and security standards for all products sold.
- Alert management if we observe illegal workplace misconduct by other employees.
- Exceed ecological standards required in every community where we do business.
- Comply with all applicable wage and hour laws.
- Comply with all applicable antitrust laws.
- Conduct business in and with foreign countries in a manner that is legal and proper under United States and foreign laws.
- Not offer or give any form of bribe or kickback or other thing of value to any person or pay to obtain or expedite government action or otherwise act in violation of the Foreign Corrupt Practices Act or the laws of other countries.
- Not request or receive any bribe or kickback.
- Promote fair, accurate, timely, and understandable disclosure in reports filed with the Securities and Exchange Commission and in other public communications by the Company.

## 2. Take care of our members

Costco membership is open to business owners, as well as individuals. Our members are our reason for being – the key to our success. If we don't keep our members happy, little else that we do will make a difference. There are plenty of shopping alternatives for our members and if they fail to show up, we cannot survive. Our members have extended a trust to Costco by virtue of paying a fee to shop with us. We will succeed only if we do not violate the trust they have extended to us, and that trust extends to every area of our business. To continue to earn their trust, we pledge to:

- Provide top-quality products at the best prices in the market.
- Provide high quality, safe and wholesome food products by requiring that both suppliers and employees be in compliance with the highest food safety standards in the industry.
- Provide our members with a 100% satisfaction guarantee on every product and service we sell, including their membership fee.
- Assure our members that every product we sell is authentic in make and in representation of performance.
- Make our shopping environment a pleasant experience by making our members feel welcome as our guests.
- Provide products to our members that will be ecologically sensitive.
- Provide our members with the best customer service in the retail industry.
- Give back to our communities through employee volunteerism and employee and corporate contributions to United Way and Children's Hospitals.

## 3. Take care of our employees

Our employees are our most important asset. We believe we have the very best employees in the warehouse club industry, and we are committed to providing them with rewarding challenges and ample opportunities for personal and career growth. We pledge to provide our employees with:

- Competitive wages
- Great benefits
- A safe and healthy work environment
- Challenging and fun work
- Career opportunities
- An atmosphere free from harassment or discrimination
- An Open Door Policy that allows access to ascending levels of management to resolve issues
- Opportunities to give back to their communities through volunteerism and fund-raising

Career Opportunities at Costco:

- Costco is committed to promoting from within the Company. The majority of our current management team members (including Warehouse, Merchandise, Administrative, Membership, Front End and Receiving Managers) are "home grown."
- Our growth plans remain very aggressive and our need for qualified, experienced employees to fill supervisory and management positions remains great.
- Today we have Location Managers and Vice Presidents who were once Stockers and Callers or who started in clerical positions for Costco. We believe that Costco's future

executive officers are currently working in our warehouses, depots and buying offices, as well as in our Home Office.

## 4. Respect our suppliers

Our suppliers are our partners in business and for us to prosper as a company, they must prosper with us. To that end, we strive to:

- Treat all suppliers and their representatives as we would expect to be treated if visiting their places of business.
- Honor all commitments.
- Protect all suppliers' property assigned to Costco as though it were our own.
- Not accept gratuities of any kind from a supplier.

These guidelines are exactly that – guidelines – some common sense rules for the conduct of our business. At the core of our philosophy as a company is the implicit understanding that all of us, employees and management alike, must conduct ourselves in an honest and ethical manner every day. Dishonest conduct will not be tolerated. To do any less would be unfair to the overwhelming majority of our employees who support and respect Costco's commitment to ethical business conduct. Our employees must avoid actual or apparent conflicts of interest, including creating a business in competition with the Company or working for or on behalf of another employer in competition with the Company. If you are ever in doubt as to what course of action to take on a business matter that is open to varying ethical interpretations, TAKE THE HIGH ROAD AND DO WHAT IS RIGHT.

If we follow the four principles of our Code of Ethics throughout our organization, then we will achieve our fifth principle and ultimate goal, which is to:

## 5. Reward our shareholders

- As a company with stock that is traded publicly on the NASDAQ Stock Market, our shareholders are our business partners.
- We can only be successful so long as we are providing them with a good return on the money they invest in our Company.
- This, too, involves the element of trust. They trust us to use their investment wisely and to operate our business in such a way that it is profitable.
- Over the years Costco has been in business, we have consistently followed an upward trend in the value of our stock. Yes, we have had our ups and our downs, but the overall trend has been consistently up.
- We believe Costco stock is a good investment, and we pledge to operate our Company in such a way that our present and future stockholders, as well as our employees, will be rewarded for our efforts.

**Reporting of Violations and Enforcement**

1. The Code of Ethics applies to all directors, officers, and employees of the Company. Conduct that violates the Code of Ethics will constitute grounds for disciplinary action, ranging from reprimand to termination and possible criminal prosecution.
2. All employees are expected to promptly report actual or suspected violations of law or the Code of Ethics. Federal law, other laws and Costco policy protect employees from retaliation if complaints are made in good faith. *Violations involving employees* should be reported to the responsible Executive Vice President, who shall be responsible for taking prompt and appropriate action to investigate and respond. *Other violations (such as those involving suppliers) and those involving accounting, internal control and auditing* should be reported to the general Counsel or the Chief Compliance Officer (999 Lake Drive, Issaquah, WA 98027), who shall be responsible for taking prompt and appropriate action to investigate and respond. Reports or complaints can also be made, confidentially if you choose, through the Whistleblower Policy link on the Company's eNet or Intranet site.

**What do Costco's Mission Statement and Code of Ethics have to do with you?**

### EVERYTHING!

The continued success of our Company depends on how well each of Costco's employees adheres to the high standards mandated by our Code of Ethics. And a successful company means increased opportunities for success and advancement for each of you.

No matter what your current job, you can put Costco's Code of Ethics to work every day. It's reflected in the energy and enthusiasm you bring to work, in the relationships you build with your management, your co-workers, our suppliers and our members.

By always choosing to do the right thing, you will build your own self-esteem, increase your chances for success and make Costco more successful, too. It is the synergy of ideas and talents, each of us working together and contributing our best, which makes Costco the great company it is today and lays the groundwork for what we will be tomorrow.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT D

*Anti-Bribery Policy*



# Anti-Bribery Program

Costco Wholesale Corporation (Costco or the Company) is firmly committed to compliance with laws, including those concerned with preventing corruption and other standards of doing business.  These laws include, among others, the United States Foreign Corrupt Practices Act and the United Kingdom Bribery Act.  For simplicity, this document contains references to policies and procedures in force in the United States.  Other countries are substantially similar.

A.  Costco Personnel

The Code of Ethics is the key document driving the conduct of the Company's business.  It is embedded in the Employee Agreement, which defines the obligations of Costco's employees.

Number one in the Code is "Obey the Law," with the following admonitions:

- Do not offer, give, ask for, or receive any form of bribe or kickback to or from any person or pay to expedite government action or otherwise act in violation of the Foreign Corrupt Practices Act.
- Conduct business in and with foreign countries in a manner that is legal and proper under United States and foreign laws.
- Respect all public officials and their positions.
- Comply with all laws and other legal requirements.

The Code thus prohibits employees from giving or receiving gratuities in connection with Costco's business, whether or not legal or otherwise permissible under local law or custom.  The Code applies to all directors, officers, and employees of Costco. Violation is cause for disciplinary action.

All Costco employees are expected to promptly report actual or suspected violations of the Code.  Multiple reporting options are available, ranging from the Open Door Policy, under which employees may report any work-related issue to any manager or supervisor at Costco, to the whistleblower website (www.costco.ethicspoint.com), which allows confidential and anonymous reporting by anyone, wherever located, in several languages, to contacting the General Counsel.  The Costco whistleblower policy protects employees from retaliation for complaints made in good faith.

April 30, 2020 revision

In addition, Costco's travel and entertainment policies, segregation of duties policies, and charitable contribution policies, among others, are designed to ensure compliance with Costco's Code. Costco's internal and external auditors regularly monitor such policies for compliance, and employee training on the Code is required.

   B.  Costco Suppliers and Contractors

Anti-bribery and audit provisions are included in contracts with suppliers and contractors. Costco also expects suppliers or potential suppliers to promptly report actual or suspected violations.   Costco sends out an annual reminder to suppliers of its gratuity policy.  Suppliers and contractors that violate Costco's gratuity policies are subject to termination.  Anti-bribery training is available to Costco's suppliers and contractors and required in some cases.

For mutual convenience, Costco asks its elevated risk third parties to register with TRACE's online third-party management system ("TPMS") (https://tpms.traceinternational.org). Generally, Costco requests elevated-risk third parties to obtain from TRACE, for a nominal fee, a TRAC registration number and provide its TRAC profile to Costco for review.  In certain circumstances, the Company may ask the third party to register through TPMS for a more intensive screening, such as TRACE Certification.

Questions concerning this policy should be directed to General Counsel, Costco Wholesale Corp., 999 Lake Drive, Issaquah, WA  98027.